UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM WALLER,

        Plaintiff,

Case No. 1:23-cv-1224

Hon. Robert J. Jonker

v.

UNKNOWN RICHARDSON, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Adam Waller, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The incident occurred at the MDOC's Ionia Correctional Facility (ICF). All defendants have been dismissed except for plaintiff's Eighth Amendment claim against Corrections Officer (CO) Unknown (Michael) Richardson regarding Richardson's use of his Taser on November 19, 2020. *See* Opinion (ECF No. 12, PageID.72). This matter is now before the Court on defendant Richardson's Motion for summary judgment on the basis of exhaustion (ECF No. 16). Plaintiff did not oppose the motion.

    **I.**    **Background**

The Court summarized the relevant portions of plaintiff's complaint as follows:

> Plaintiff alleges that, on November 19, 2020, Defendant Richardson "aimed and discharged his Taser" at Plaintiff's face "while breaking up an altercation" despite the opportunity to deploy his Taser at Plaintiff's body. (ECF No. 1, PageID.5; ECF No. 1-1, PageID.12.) Plaintiff claims that he was subsequently denied medical care by an unidentified nurse and "medical staff." (ECF No. 1, PageID.5; ECF No. 1-2, PageID.13.) . . .

1

Opinion (ECF No. 12, PageID.59). Plaintiff seeks a declaratory judgment, compensatory damages, and punitive damages. *Id*. at Page ID.60.

## II. Summary Judgment

### A. Legal standard

Defendant Richardson has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, plaintiff did not file a response in opposition to the motion for summary judgment.[1] "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

**B.    Lack of Exhaustion**

**1.    Exhaustion requirement**

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

---

[1] The Court notes that plaintiff filed a "verified" complaint. *See* Compl. at PageID.7; *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). However, his complaint is not a "response" to motion for summary judgment. In this regard, the complaint simply references the relevant grievance (later identified as Grievance 1556) stating, "This is the start of the pattern". PageID.5.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

2. **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

CO Richardson identified two grievances which could potentially apply to plaintiff's claim: Grievance ICF-20-12-1606-28i ("1606") (ECF No. 19-3, pageID.113-116); and, ICF-20-11-1556-28i ("1556") (ECF No. 19-3, PageID.117-120). *See also*, MDOC Prisoner Step III Grievance Report (ECF No. 19-3, PageID.108-112). Neither of these grievances exhausted plaintiff's claims alleged against CO Richardson.

Grievance 1606 refers to the date of the incident as December 1, 2020 (12 days after Richardson allegedly tased him) and is directed at an unnamed medline nurse who would not answer his urgent questions and told him to file a kite. Grievance 1606 at PageID.116. In short, this grievance did not involve CO Richardson.

Grievance 1556 involves the incident with CO Richardson, stating (in plaintiff's words):

> On 11.19.20 I was in a fight on 5 block yard. While breaking up the altercation, C/O Richardson deliberately aimed his taser at my face & discharged it. It struck me in the left right cheek, went through, & was lodged in my face. This act is a clear violation of use of a taser pursuant to policy & it's a clearly negligent & irresponsible act. The officer had the timing, spacing, & alleged training that gave him opportunity to have made a correct & safe decision.
>
> This shows malicious intent.

Grievance 1556 at PageID.119.

The MDOC rejected the grievance because plaintiff did not attempt to resolve the issue before filing the grievance. In response to the question, "What attempt did you make to resolve this issue prior to writing this grievance? On what date? . . . If none, explain why", plaintiff responded: I have no one to immediately try to resolve the issue with due to its severity & blatant disregard for policy." PageID.119. The MDOC addressed plaintiff's response as follows:

> Your grievance is being rejected for the reason that you are in violation of OP03.02.130.  With in two days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in the Operations Support Administration. The Step I grievance must be filed within FIVE BUSINESS DAYS. You must first try and resolve the issue with staff prior to writing a grievance, there are other means of trying to resolve with staff for instance contacting the staff members [sic] immediate supervisor, ARUS or SGT or by the institutional kite system. The grievance must not be the attempt itself. Grievance is being rejected at Step I.
>
> PD 03.02.130 Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff. Grievant did not allow staff adequate time to attempt to resolve, date of incident is the same date grievance was written. Grievance is rejected at step I.

PageID.120.  In his Step II appeal, plaintiff admitted that he did not attempt to resolve the matter with defendant Richardson or any member of staff before filing the grievance.[2]  The rejection was upheld at Step II.  *See* PageID.117.  In his Step III appeal, plaintiff made a similar statement.[3]  The rejection was upheld at Step III.  See PageID.117.

---

[2] Plaintiff stated (in his words):

> My grievance was denied under False pretenses.  Though I didn't proactively address my issue with staff, due to the incident itself, superior staff were made aware & I did address my issue with them.  True, I didnt seek them out as a remedy, I did in fact state my issue & my concerns.  The issue at hand still being that I was shot in the face with a taser & nothing was done about it.

PageID.118.

[3] Plaintiff stated (in his words):

> My grievance was denied under False pretenses.  I didn't address my issue with the specific staff member; but superior staff were made aware & I did address my issue with them. In particular, Sgt. Burggren who reviewed me on my ticket.  Once I received the notion he cared less, I wrote a grievance.  The issue at hand still being I was shot in the face with a taser, nothing was done about it, & im even being denied health care assistance.

PageID.118.

6

In summary, Grievance 1556 was rejected at Steps I, II and III because plaintiff took no steps to resolve the issue prior to filing the grievance. Based on this record, plaintiff did not properly exhaust a grievance to support his claim against defendant CO Richardson. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Richardson's motion for summary judgment should be granted.

### III. Recommendation

For these reasons, I respectfully recommend that defendant Richardson's motion for summary judgment on the basis of exhaustion (ECF No. 18) be **GRANTED** and that this action be **DISMISSED**.

Dated:   June 25, 2025                                            /s/ Ray Kent
                                                                  RAY KENT
                                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).